LYNCH, Collector of Internal Revenue, v. TURRISH.

(Circuit Court of Appeals, Eighth Circuit. September 4, 1916.)

No. 4651.

1. INTERNAL REVENUE ⬦�て7—INCOME TAX—CUMULATIVE PROFITS OF STOCK-HOLDER—"INCOME, GAINS, OR PROFITS"—"GAINS"—"PROFITS."

The amount in excess of the par value and of the actual value of his stock in 1903. derived by a stockholder of a domestic corporation, subject to Income Tax Law Oct. 3, 1913, c. 16, § II, A, subds. 1, 2, 38 Stat. 166 (Comp. St. 1913, §§ 6319, 6320), exclusively from the increase in value of his stock prior to March 1, 1913, the effective date of that act, on account of the gradual advance in the value of the property of the corporation prior to that date, but first realized by him in cash by the distribution in 1914 by a dividend to all the stockholders of the corporation of all the proceeds of the sale in 1914 of all the property of the corporation, is not "income, gains, or profits" of the stockholder, taxable under the statute for the year 1914, because (1) no income, gains, or profits accrued to the stockholder during the year 1914, or after March 1, 1913, and (2) the sale of the property of.the corporation in 1914 and the distribution of its proceeds to the stockholders was a mere change in form without increase in value of the property he owned before the act took effect.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 8–10; Dec. Dig. ⬦➤7.

For other definitions, see Words and Phrases, First and Second Series, Gains; Income; Profits.]

2. CORPORATIONS ⬦➤182—INTEREST OF STOCKHOLDERS—INCREASED VALUE OF ASSETS.

While a corporation holds the legal title to, and the right to manage, control, and convey, its property, it holds the property for its stockholders, who are the equitable and beneficial owners, and have an immediate interest in its enhanced value and in the undivided income, gains, profits,

or surplus of the corporation, which go to increase the value of their stock.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 686–690; Dec. Dig. ☞182.]

3. STATUTES ☞263—CONSTRUCTION—RETROSPECTIVE OPERATION.

Words in a statute ought not to be given a retrospective operation, unless they are so clear, strong, and imperative that no other meaning can be annexed to them, or unless the intention of the Legislature cannot be otherwise satisfied.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 344, 349; Dec. Dig. ☞263.]

4. INTERNAL REVENUE ☞7—INCOME TAX LAW—CONSTRUCTION AND OPERATION.

The enhanced value of property of a corporation, which accrues from the gradual increase in its value during a series of years prior to the effective date of an income tax law, although divided or distributed by dividend or otherwise subsequent to that date, does not become "income, gains, or profits" taxable under such an act, but is rather an "increase of capital assets."

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 8–10; Dec. Dig. ☞7.]

In Error to the District Court of the United States for the District of Minnesota; Wilbur F. Booth, Judge.

Action by Henry Turrish against E. J. Lynch, Collector of Internal Revenue for the District of Minnesota. Judgment for plaintiff, and defendant brings error. Affirmed.

This writ of error was sued out to reverse a judgment which the plaintiff below, Turrish, recovered against Lynch, the collector, for the return to him of $127.12, which the collector had assessed against him as an additional income tax under the Tariff Act of October 3, 1913, c. 16, § II, A, 38 Stat. 166, 3 U. S. Comp. Stat. 1913, §§ 6319, 6320, 6321, and which he had paid under protest. The facts were alleged in the plaintiff's complaint and admitted by demurrer. The Payette Lumber & Manufacturing Company was a corporation organized in 1903, with a capital stock of $1,500,000, divided into 15,000 shares, of the par value of $100 each, of which Turrish owned, in 1913 and 1914, 799¾ shares, of the par value of $79,975. The Payette Company began, immediately after its organization in 1903, to invest its capital in timber lands in the state of Idaho, and, prior to March 1, 1913, it had invested $1,375,000 thereof therein, and the remainder thereof in other assets, the ownership of which was incidental to the owning, holding, and preservation of the timber lands. During this time it did no business, except such as was incidental to the ownership and care of these lands, and it made no dividends or payments of any kind to its stockholders. On March 1, 1913, the Payette Company still owned all the property and assets it had invested its capital in, and the value of these assets was not less than $3,000,000. The increase in the value of its property was due entirely to the gradual increase in the value of its timber lands between 1903 and March 1, 1913, and the value of the stock of Mr. Turrish was then twice its par value, or $159,950. In March, 1913, Mr. Turrish and all the other stockholders of the Payette Company gave an option in writing to purchase their stock for twice its par value. The holders of this option formed another corporation, to which they transferred their option, and that company preferred to purchase the property of the Payette Company to purchasing its capital stock. Thereupon, in December, 1913, that company offered to sell all its property to the Boise-Payette Company, the new corporation which held the option to purchase its stock, for $3,000,000 in cash, on condition that the new company would assume its debts and liabilities. The offer was accepted, and in March, 1914, the trans-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

action was consummated. The Payette Company then had no assets but the $3,000,000 in cash and no liabilities not assumed by the Boise-Payette Company. It then distributed the $3,000,000 among its stockholders, who surrendered their stock, and the corporation has since been dormant. In the distribution of the proceeds of the property of the company Mr. Turrish received $159,950, which was twice the par value of his stock. The Commissioner of Internal Revenue deemed one-half of this sum, or the par value, and the actual value in 1903, of the stock of Turrish, capital returned to him, and the other half, or the increase of the actual value of his stock between 1903 and March 1, 1913, by reason of the gradual advance during that time in the value of the timber lands of the Payette Company, income derived by him in 1914 from a dividend received from a domestic corporation subject to the income tax law. On this ground he assessed against Turrish an additional income tax of $127.12 on account of the second half of the $159,950. Turrish paid this tax under protest and brought this action for the return of the amount he paid. The court below was of the opinion that no part of this $159,950 was income taxable under the act of October 3, 1913, and it accordingly overruled the demurrer and rendered judgment for the plaintiff.

Alfred Jaques, U. S. Atty., of Duluth, Minn., for plaintiff in error.
A. W. Clapp, of St. Paul, Minn. (N. H. Clapp, of St. Paul, Minn., H. Oldenburg, of Carlton, Minn., and Harold J. Richardson, of St. Paul, Minn., on the brief), for defendant in error.

Before SANBORN, ADAMS, and CARLAND, Circuit Judges.

SANBORN, Circuit Judge (after stating the facts as above). [1] Is the amount in excess of the par value, and of the actual value of his stock in 1903, derived by a stockholder of a domestic corporation subject to the Income Tax Law (38 Stat. 166, c. 16, § II, A, 3 U. S. Comp. Stat. 1913, §§ 6319, 6320, 6321), exclusively from the increase in the value of his stock prior to March 1, 1913, the effective date of that act, on account of the gradual advance in the value of the property of the corporation prior to that date, but first realized by him in cash by the distribution in 1914 by a dividend to all the stockholders of the corporation of all the proceeds of the sale in March, 1914, of all the property of the corporation, income, gains, or profits of the stockholder taxable under that law? The negative answer to this question seems at first to be reasonable: (1) Because no income, gains, or profits accrued to the stockholder during the year 1914, or after March 1, 1913; his property remained of the same value and gained nothing during that time; and (2) because the sale of the property of the corporation in 1914 and the distribution of its proceeds to the stockholders was a mere change of the form, without increase of the value, of the property he owned before the Income Tax Law took effect. Counsel for the United States, however, contend that the $79,975 which measures the increase in the value of the stock of the plaintiff between 1903 and March 1, 1913, derived from the gradual advance during that time of the value of the timber land of the corporation is taxable as his income: (1) Because he had no interest in the increased value of the property of the corporation until the dividend which distributed the proceeds of the sale of its property was declared in 1914; (2) because upon this distribution, and not before he first obtained an interest in this increased value, and thus in 1914 for the first time, it became income to him; and (3) because this $79,975 was derived from a dividend

received by him in 1914. To sustain the first two contentions counsel invokes the general rule that a stockholder has no legal title or right to the income, gains, or profits of his corporation until the dividends of that income, or of those gains or profits, have been declared, and cites Hyatt v. Allen, 56 N. Y. 553, 15 Am. Rep. 449, and like cases in support of that rule. But the tax authorized by the act under consideration is an annual tax on the income, gains, or profits arising or accruing after March 1, 1913, in the calendar year preceding the levy, and neither the rule itself nor any rational application of it is determinative of the question in what year this alleged income accrued or arose, or of the question whether the proceeds of the dividend were income or capital. If it were, then the entire $159,950, would, by the same mark, have become his income, gains, and profits when the distribution was made in 1914, for it was all distributed to him by the same dividend, and until that dividend was declared he had no better legal title or right to any of the property of the corporation, or to the proceeds of any of it, than he had to the increased value of its timber land.

[2] It is true that a corporation holds the legal title of, and the right to manage, control, and convey, its property, and that a stockholder is without that title and right. But, after all, the corporation is nothing but the hand or tool of the stockholders, in which they hold its property for their benefit. They are the equitable and beneficial owners of all its property, and it is the mere holder and manager of it for them. The benefit of every increase in the value of its property is their benefit, and the injury of every decrease of the value of its property is their injury. They may by appropriate action at any time require and compel it to sell all its property and to distribute its proceeds among them, and may thus strip it of all its capital, all its income, surplus, gains, and profits, and leave it penniless. So in reality, as against its stockholders, a corporation has no and they have all the beneficial interest in its property. Every substantial increase in the value of its property immediately and proportionately increases the actual value of their stock, and every substantial decrease of its value immediately and proportionately decreases the actual value of their stock. Whether the value of the property of a corporation is increased by a gradual advance through a series of years of the value of the same real or personal property held throughout, or by undivided income, gains, or profits the actual value of its stock is immediately and proportionately increased, and the holders of that stock may at any time convey their respective beneficial interests in that enhanced value in those undivided profits and in all the other property of the corporation by sale, gift, or devise. The Collector v. Hubbard, 12 Wall. 1, 20 L. Ed. 272. The position that a stockholder in a corporation has no interest in the enhanced value of its property, or in its undivided income, gains, profits, or surplus, until a dividend thereof is declared, is untenable and may not prevail.

It is admitted by the demurrer that in this case the value of the property of the corporation increased solely by reason of the advance in the value of its timber lands from $1,500,000 in 1903 to $3,000,000 on March 1, 1913, that the value of the stock of the plaintiff from the same cause proportionately increased from $79,975 in 1903 to $159,950 on March 1, 1913, and that no further increase of value, gain, income,

or profit resulted before or by reason of the sale of all the property of the corporation in March, 1914, and the distribution of its proceeds among its stockholders. The Income Tax Law of 1913 provides:

"That there shall be levied, assessed, collected and paid annually upon the entire net income arising or accruing from all sources in the preceding calendar year * * * a tax of 1 per cent. per annum." Paragraph A, subd. 1.

"In addition to the income tax provided under this section [herein referred to as the normal income tax] there shall be levied, assessed, and collected upon the net income of every individual an additional income tax [herein referred to as the additional tax] of 1 per centum per annum. * * * All the provisions of this section relating to individuals who are to be chargeable with the normal income tax, so far as they are applicable and are not inconsistent with this subdivision of paragraph A, shall apply to the levy, assessment, and collection of the additional tax imposed under this section." Paragraph A, subd. 2.

"That, subject only to such exemptions and deductions as are hereinafter allowed, the net income of a taxable person shall include gains, profits, and income derived from salaries, wages, or compensation for personal service of whatever kind and in whatever form paid, or from professions, vocations, businesses, trade, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in real or personal property, also from interest, rent, dividends, securities, or the transaction of any lawful business carried on for gain or profit, or gains or profits and income derived from any source whatever, including the income from but not the value of property acquired by gift, bequest, devise, or descent." Paragraph B.

After specifying the exemptions and deductions allowed in the computation of the net income for the purpose of levying the normal tax the law declares that:

"The said tax shall be computed upon the remainder of said net income of each person subject thereto, accruing during each preceding calendar year ending December thirty-first: Provided, however, that for the year ending December thirty-first, nineteen hundred and thirteen, said tax shall be computed on the net income accruing from March first to December thirty-first, nineteen hundred and thirteen, both dates inclusive." Section II, D.

[3] All the value of the property of the corporation and all the value of the stock of the plaintiff, whether it was due to capital assets, or income, or gains, or profits, or all of these combined, had arisen and accrued and had become their property before March 1, 1913. Words in a statute ought not to be given a retrospective operation, unless they are so clear, strong, and imperative that no other meaning can be annexed to them, or unless the intention of the Legislature cannot be otherwise satisfied. United States v. Burr, 159 U. S. 78, 15 Sup. Ct. 1002, 40 L. Ed. 82; United States v. American Sugar Co., 202 U. S. 563, 577, 26 Sup. Ct. 717, 50 L. Ed. 1149. The provisions of this law that the normal tax shall be levied annually upon the net income arising or accruing in the preceding calendar year, that so far as this case is concerned all the provisions relative to the levying of the normal tax shall apply to the levying of the additional tax, that the normal tax shall be computed on the remainder of the net income of each person accruing during each preceding calendar year ending December 31st, except that for the year ending December 31, 1913, it shall be computed on the net income accruing from March 1st to December 31st, leave no doubt that the Congress intended to and did exclude from the burdens of the

taxes it imposed by the Income Tax Act of October 3, 1913, all income, gains, and profits of every kind which had arisen or accrued prior to March 1, 1913. It clearly intended to leave, and surely did leave, all the income, gains, and profits which had accrued or arisen prior to that date, whether they were in the form of divided or undivided surplus, income, gains, or profits, as free from every income tax it imposed, and as absolutely the property of their respective legal and equitable owners, as was any of their original capital or property. Now the subsequent change, by sale, distribution, or otherwise, of the form of property held on March 1, 1913, without thereby enhancing its value, or causing any gain, profit, or income to its holders, as from real to personal property, or from stock to cash, does not subject it to the income tax, because it produces no gain, profit, or income; it leaves the value of the property the same after as before the change. And as the sale of the property of the Payette Company in 1914 and the distribution of its proceeds to its stockholders by the dividend did not enhance the value of the property of the corporation or of the stockholders, or produce any gain, profit, or income for them, but left the value of their property the same that it was before those transactions, and the same as it was when the Income Tax Law took effect, the declaration and payment in 1914 of the dividend by which the proceeds of the sale of the property of the corporation were distributed to its stockholders did not transform the increased value of the plaintiff's stock, which had accrued and arisen prior to March 1, 1913, into income, gains, or profits accruing or arising subsequent to that date and did not subject it to any income tax. Merchants' Ins. Co. v. McCartney, Fed. Cas. No. 9,443; Bailey v. Railroad Co., 22 Wall. 604, 22 L. Ed. 840; Id., 106 U. S. 109, 114, 1 Sup. Ct. 62, 27 L. Ed. 81; United States v. Smith, Fed. Cas. No. 16,341; Von Baumbach v. Sargent Land Co., 219 Fed. 31, 36, 37, 134 C. C. A. 649, 654, 655; Sargent Land Co. v. Von Baumbach (D. C.) 207 Fed. 423, 430, 432, 434; Mitchell Bros. Co. v. Doyle (D. C.) 225 Fed. 437, 439, 440; Doyle, Collector, v. Mitchell Bros. Co., 235 Fed. 686, —— C. C. A. —— (6th Circuit), filed June 30, 1916; Chicago, Bur. & Q. R. Co. v. Page, 1 Biss. 461, Fed. Cas. No. 2,668; Reynolds v. Williams, Fed. Cas. No. 11,734, 4 Biss. 108.

The third argument of counsel for the collector is that, because paragraph B provides that "the net income of a taxable person shall include gains, profits and income derived * * * from interest, rent, dividends, securities, or the transaction of any lawful business carried on for gain or profit, or gains or profits and income derived from any source whatever," all surplus or undivided profits included in any dividend received after March 1, 1913, although they accrued and arose years prior to that date, are by these terms of the law subjected to the additional tax; and he cites, in support of this conclusion, Van Dyke v. City of Milwaukee, 159 Wis. 460, 146 N. W. 812, 150 N. W. 509. Conceding that this decision sustains this proposition of counsel for the government, it is not controlling and has not proved persuasive. In Van Dyke's Case Judge Barnes filed an able dissenting opinion, which has proved more convincing, and which is in accord with the decision

of the Supreme Court in Gray v. Darlington, 15 Wall. 63, 21 L. Ed. 45, and with the weight of authority. It was, as we have seen, the general purpose of Congress and the general effect of the act of October 3, 1913, to impose an annual tax upon incomes, gains, and profits accruing subsequent to March 1, 1913, and to impose none upon those which accrued or arose before that date. The interpretation of the clause of the act under consideration which brings within its grasp all incomes, gains, and profits accrued before the effective date of the act which happen to form parts of dividends declared after that date flies in the teeth of the general purpose and policy of Congress in enacting the statute, creates an exception to the general effect of the statute which is not clearly made by the act itself and constitutes a strained and unnatural construction. Such a construction should not be adopted unless the terms of the act imperatively require it. The natural and legal presumption is that Congress intended to treat all income, gains, and profits accruing prior to March 1, 1913, alike, and as it excluded from the burden of the income taxes all such income, gains, and profits as accrued prior to March 1, 1913, that did not become parts of dividends declared after that date, the presumption is that it intended to exclude those also. Not only is there nothing in the act to negative or overcome this presumption, but the terms of the law when carefully read sustain it. By the terms of the clause on which counsel relies the taxable net income there specified does not include all dividends received after March 1, 1913, or all proceeds of such dividends, but "gains, profits, and income derived" from dividends. The clause is treating of the net income on which the additional tax is to be levied. By subdivision 2, par. A, all the provisions of the section relating to individuals who are chargeable with the normal income tax, so far as they are applicable and are not inconsistent with that subdivision, are made to apply to the levy, assessment, and collection of the additional tax. Two of the provisions of that section relating to individuals who are chargeable with the normal tax, which are applicable to the levy, assessment, and collection of the additional tax, and are not inconsistent with the provisions of subdivision 2, are: (1) That there shall be levied, assessed, collected, and paid annually "upon the entire net income accruing from all sources in the preceding year a tax of one per centum per annum"; and (2) that the tax shall be computed upon the remainder of net income "accruing during each preceding calendar year ending December 31st: Provided, however, that for the year ending December thirty-first, nineteen hundred and thirteen, said tax shall be computed on the net income accruing from March first to December thirty-first, nineteen hundred and thirteen." . All these provisions of the act must be read and construed together, and when so read and interpreted there is no logical or rational way of escape from the conclusion that the "gains, profits and income derived" from dividends charged with the additional tax by paragraph B are the gains, profits, and income arising and accruing subsequent to March 1, 1913, derived from dividends and those only. And the conclusion is that the proceeds of the enhanced value of the stock of the plaintiff which accrued

and arose prior to March 1, 1913, from the gradual increase in the value of the timber land of the Payette Company, and which formed a part of the dividend made by that company in 1914, was not subject to the additional income tax under the act of October 3, 1913.

[4] This conclusion finds substantial support from another consideration. The words "income, gains, and profits" are used in common parlance and as legal terms in contradistinction to capital, property, and capital assets. The enhanced value of the land or property of a corporation, or of the stock of a corporation, which slowly accrues through a series of years from the natural and gradual increase of the value of the timber land or other property which the corporation holds without trading, is more analogous to property, capital, or capital assets than to income, gains, or profits. It is rather a growth, an increase of the property or capital assets, than income, gains, or profits produced by the property. Adverting to the oft-quoted analogy declared by the Supreme Court of Georgia in Waring v. Savannah, 60 Ga. 100, that "the fact is, property is the tree, income is the fruit; labor is the tree, income the fruit; capital the tree, income the fruit," the enhanced value of property from the slow and gradual increase of its value through a series of years is rather a growth of the tree than the production of its fruit. It is so inequitable, so unjust, so discriminatory to treat such an enhanced value, accruing through many years before the enactment of an income tax law, as the income, gains, or profits of the year in which it happens subsequently to be distributed, that the following rule, which is supported by the more forcible reasons and by the great preponderance of authority, has become the established law in the federal courts. The enhanced value of property which accrues from the gradual increase in its value during a series of years prior to the effective date of an income tax law, although divided or distributed by dividend or otherwise subsequent to that date, does not become income, gains, or profits taxable under such an act. Such enhanced value, like the property of which it is an outgrowth and in which it inheres, becomes the absolute property of its legal and equitable owners before the effective date of the law, and as against such a law thereafter remains their capital assets. Gray v. Darlington, 15 Wall. 63, 65, 66, 67, 21 L. Ed. 45; Sargent Land Co. v. Von Baumbach (D. C.) 207 Fed. 423, 432; Von Baumbach v. Sargent Land Co., 219 Fed. 31, 36, 37, 134 C. C. A. 649, 654, 655; Gauley Mountain Coal Co. v. Hays, 230 Fed. 110, 144 C. C. A. 408; Industrial Trust Co. v. Walsh (D. C.) 222 Fed. 437; Mitchell Bros. Co. v. Doyle (D. C.) 225 Fed. 437, 439, 440; Doyle v. Mitchell Bros. Co., 235 Fed. 686, —— C. C. A. —— (6th Circuit), filed June 30, 1916; Hudson's Bay Co., Ltd., v. Stevens, 25 L. I. R. 709, 5 Tax Cases, 424, 436, 438, 439; Tebrau (Johore) Rubber Syndicate, Ltd., v. Farmer, 47 Scot. L. R. 816, 5 Tax Cases, 658.

Because no income, gains, or profits accrued to the plaintiff during the year 1914, or after March 1, 1913, but during that time his property remained of the same value, and because the sale of the property of the Payette Company in 1914 and the distribution of its proceeds by a dividend to its stockholders was but a change of the form, with-

out any increase of the value, of the property he owned before the Income Tax Law of 1913 took effect, there was no error in the judgment below, and it is affirmed.